FILED

2016 Mar-24  AM 10:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **GEORGE D. HOLLAND,** **individually and as the personal** **representative of The Estate of** **OWEN D. HOLLAND, deceased,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | Civil Action Number **5:11-cv-02189-AKK** |
| **vs.** | ) ) | |
| **AIRCO INC., et. al,** | ) ) ) | |
| **Defendants.** | ) ) | |

## <u>MEMORANDUM OPINION</u>

George D. Holland ("George") brings this matter individually and as the personal representative of the estate of Owen D. Holland ("Owen") against Crane Company ("Crane"), Fluor Daniel Services Corporation ("Fluor Daniel"), and Goulds Pumps Incorporated ("Goulds"), (collectively "the Defendants"), for allegedly exposing Owen to airborne asbestos fibers that directly caused his contraction of and subsequent death from malignant mesothelioma. Docs. 186 at 1; 187 at 1; 188 at 1. The Defendants' motions for summary judgment, docs. 182, 184, and 185, are fully briefed and ripe for review. For the reasons explained more fully below, the motions are due to be granted.

### I.     Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact.  *Id*. at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial."  *Id*. at 324 (citation and internal quotation marks omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor).  Any factual disputes will be resolved in the non-moving party's favor when sufficient

2

competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II.    FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

### A. FACTS

Owen worked at the Monsanto Chemical Plant located in Decatur, Alabama, from 1967 until 2004. Doc. 183-2 at 3. After initially working as a cutter and baler, Monsanto transferred Owen to the "dope prep" division in 1974. Doc. 184-2 at 3-4. In this position, Owen worked on metal pumps and valves, including pumps manufactured by Goulds and valves manufactured by Crane. *See id*. at 5-7; doc. 186-3 at 44-46. Owen's duties included taking pumps off and putting them on the production line and sweeping the packing from around the pumps. Doc. 184-2

3

at 8.  Owen also vacuumed and/or swept fibers from around the valves.  Doc. 186-3 at 46-47.  Owen only worked on the external surfaces of the pumps and valves, and never worked on their internal components.  Docs. 184-2 at 8-13, 27; 186-3 at 46-47.

In 1985, Monsanto transferred Owen to spinning operator, a position in which Owen continued working around metal pumps, including pumps manufactured by Goulds. Doc. 184-2 at 15.  Again, Owen only worked on the external surfaces of the pumps.  *See id*. at 17.  From 2002 until he left Monsanto in 2004, Owen worked as a floor monitor and ran the production floor.  *Id*. at 15; doc. 183-2 at 3.

## B. Procedural History

Owen and Gregory A. Legg originally filed this case in this court against forty-five defendants.  Doc. 1.  The Judicial Panel on Multidistrict Litigation ("MDL") subsequently transferred the case to the Eastern District of Pennsylvania for inclusion in MDL 875.[1]  Doc. 161.  There, Judge Eduardo C. Robreno severed Legg and Owen's claims.  *See* doc. 162-1 at 24.  Owen subsequently filed an amended and severed complaint, *see* doc.  179-1 at 33-34, alleging that he was exposed to asbestos-containing products "produced, manufactured, specified for use, installed, distributed, sold, and/or placed into the stream of commerce by . . .

---

[1] After Owen's death, George was substituted as a plaintiff in place of Owen.  *See* doc. 179-1 at 33, 59.

Defendants during his employment as a laborer, operator, and utility worker from approximately the late 19[6]0's to 2004," doc. 184-1 at 2.

After the Defendants moved for summary judgment, Judge Robreno granted the motion, in part, for Fluor Daniel as to all claims of exposure prior to May 19, 1980.[2]   Docs. 183 at 3; 183-1 at 9.   As to the remaining claims against Fluor Daniel, Judge Robreno found that an Alabama judge should address Alabama's standard for exposure in asbestos cases and the operation of Alabama's construction statute of repose, and remanded the case with leave for Fluor Daniel to refile its motion as to alleged exposure after May 19, 1980.   Doc. 183-1 at 9-10. Judge Robreno also denied Crane's and Goulds' motions for summary judgment with leave to refile in this court.   Doc. 179 at 3-4.

## III.   ANALYSIS

To prevail on a tort claim, Alabama law requires a plaintiff to show that the defendant is in fact responsible for the plaintiff's injury.   *See Thompson-Hayward Chemical Company v. Childress*, 169 So. 2d 305 (Ala. 1964).   Indeed, "[r]egardless of the theory of liability in [asbestos] cases, the threshold for every theory is proof that an injured plaintiff was exposed to asbestos-containing

---

[2]   George alleges that Fluor Daniel performed construction and maintenance work at Monsanto from 1967 through 1998.   Doc. 187 at 2.   This work purportedly entailed, in part, the installation and removal of insulation from pipes, pumps, and various production lines.   *Id.*   The claim against Fluor Daniel is based on Owen's testimony that "Daniel" performed work at Monsanto.   Fluor Daniel challenges this contention, and asserts that it is a related but distinct corporate entity from Daniel International Corporation, the entity that actually performed the construction/maintenance work at Monsanto.   Doc. 182 at 9.

5

products for which the defendant is responsible." *Blackston v. Shook & Fletcher Insulation Col.*, 764 F.2d 1480, 1481 (11th Cir. 1985). Unfortunately for George, he has failed to meet this threshold burden.

### A. Crane

The court begins its analysis with Crane's motion. According to Crane, George cannot demonstrate that Owen was exposed to asbestos fibers from a product Crane manufactured, supplied, or otherwise placed into the stream of commerce. Doc. 185-1 at 1. George disagrees and contends that Monsanto used and repaired or overhauled Crane's asbestos-containing products during Owen's employment, and that Owen was exposed to and breathed the dust created by these products. Doc. 186 at 5. In support of his allegation, George has submitted evidence that some Crane valves contained parts that had asbestos in them,[3] and that Owen worked around valves, including valves manufactured by Crane, and was exposed to packing used in the valves while cleaning up pieces of packing and gasket material. Docs. 185-2 at 3-4, 6-7, 9; 186-5 at 74-75. This evidence, however, is insufficient to establish liability because it does not prove that the packing materials in the Crane valves Owen worked around contained asbestos.

---

[3] George notes that Crane admits in its interrogatory response that its valves contained asbestos-containing parts:

> Industrial valves manufactured by Crane Co. were made of steel, bronze, and other metals; the valves themselves were not composed of asbestos. . . . [*c*]*ertain* of the valves had enclosed within their metal structure asbestos-containing gaskets, packing, or discs.

Doc. 186 at 5 (citing doc. 186-4 at 35) (emphasis added).

While George may be correct that *some* valves Crane manufactured contained asbestos, this is far short of establishing that the valves Crane supplied to Monsanto had asbestos-containing component parts.  In fact, even Owen admitted that he did not know if any of the valves he worked around had their original packing material, that Monsanto routinely tried new products for the packing material, and that he could not recall the names of the manufacturers or suppliers of the packing placed in the valves, except that *he thinks* it was Sirco, Victor, Goodyear, or Sepco.  Doc. 185-2 at 6-7, 9.

Simply put, George has failed to present any evidence showing that Crane was the manufacturer of any of the packing Owen worked around or that a particular shipment to Monsanto of Crane valves had asbestos in their original packing.  As such, there is no evidence before the court linking Crane valves with original asbestos-containing component parts to the valves that Owen worked around.  Without this evidence, no reasonable jury could conclude that Owen was exposed to asbestos fibers from a product manufactured, supplied, or otherwise placed into the stream of commerce by Crane.  Accordingly, summary judgment in favor of Crane is warranted with respect to this alleged exposure.

Perhaps because of his inability to directly link Crane products to Owen's injury, George argues alternatively that, under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), Crane can still be liable for

7

Owen's exposure even if Crane did not manufacture, supply, or otherwise place into the stream of commerce the asbestos fibers that Owen was exposed to at Monsanto. Doc. 186 at 7. As George puts it, "the mere fact that a product has been altered or modified does not necessarily relieve the manufacturer or seller of liability" for necessary components in its equipment, and "[a] manufacturer or seller remains liable if . . . the alteration or modification was reasonably foreseeable to the manufacturer or seller." *Id.* at 8 (citing *Sears, Roebuck and Co. v. Harris*, 630 So. 2d 1018, 1027 (Ala. 1993) (quotations and citations omitted)). Therefore, George contends that because Crane valves require non-metal asbestos containing gaskets, packing, and/or discs to perform as designed, a jury could reasonably conclude that Crane recommended that its customers use asbestos-containing materials in Crane valves when replacing the packing materials. Doc. 186 at 7-8. This contention is unavailing because George failed to identify any evidence,[4] and the court, after combing through the record, has found none to suggest that Crane valves require the use of asbestos-containing component parts, or that Crane recommended asbestos-containing materials as replacement products.[5] Without this evidence, no reasonable fact finder could conclude that the

---

[4] In support of his assertion that Crane valves require non-metal, asbestos containing gaskets, packing and/or discs, George cites "See Exhibit 'D,'" a 206 page document. Although judges "are not like pigs, hunting for truffles buried in briefs," *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991), the court reviewed Exhibit D nonetheless to try to ferret out the relevant facts, if any, buried in this massive document.

[5] Crane offered for sale gaskets, packing, and discs manufactured by other companies that may have contained asbestos. Doc. 186-4 at 37. However, George has not presented any evidence that Crane recommended

Crane valves in use at Monsanto were designed to require asbestos packing, to the exclusion of other kinds of packing materials.  Therefore, to the extent that George seeks to hold Crane liable for Owen's exposure to asbestos-containing component parts that were not manufactured or supplied by Crane, this contention also fails.

## B. Fluor Daniel

Relying on Alabama's construction statute of repose, which bars any cause of action which accrues or would have accrued more than seven years after the substantial completion of construction, Ala. Code §6-5-221, Fluor Daniel argues, as it did before Judge Robreno, that it is due summary judgment because there is no evidence that it exposed Owen to asbestos after May 19, 1980.[6]  Doc. 182 at 13-14.  In denying this part of Fluor Daniel's motion, Judge Robreno believed that an Alabama court should address Alabama's standard for exposure in asbestos cases and the operation of Alabama's construction statute of repose.  *See* doc. 183-1 at 9-10.  This court does not have to answer the questions raised by Judge Robreno

---

asbestos-containing materials as replacement products.  Still, George contends that if Crane factory installed asbestos-containing gaskets, packing, and discs in its valves, then it is reasonable to conclude that its valves were designed to use the same, and if this case concerned the proper operation of the valves as opposed to the asbestos content of component parts, Crane would likely assert that the customer's failure to use the same materials it originally specified and factory installed would eliminate its liability for the valve's subsequent failure.  *See* doc. 186 at 9.  George's contention is pure speculation and conjecture, and is inadmissible.  *See Ellis*, 432 F.3d at 1326 (per curiam) (citing *Bald Mountain Park, Ltd.*, 863 F.2d at 1563 ("mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion").

[6] Fluor Daniel also moved for summary judgment under the "completed and accepted rule," doc. 182 at 14, which grants a contractor limited liability if it has built according to an owner's plans and specifications and the owner has accepted the work, *see McFadden v. Ten-T Corp.*, 529 So. 2d 192 (Ala. 1988).  The court does not reach this issue because George has failed to meet his threshold burden of establishing that Fluor Daniel caused his injuries.

because regardless of what causation standard applies, it is a general principle of Alabama tort law that the plaintiff bears the burden of submitting evidence proving that the defendant caused his injuries.  *See Turner*, 508 So. 2d at 254; *Thompson-Hayward Chem. Co*, 169 So. 2d at 309.  As discussed below, George has failed to meet this threshold burden.

George alleges that Fluor Daniel performed construction and maintenance work at Monsanto from 1967 through 1998.  Doc. 187 at 1-2.  To support his contention that Fluor Daniel is the proper defendant, rather than the purportedly unrelated "Daniel" that Owen referenced, *see supra* at n. 2, George relies on the testimony of Richard Mays, *see id*. at 2; doc. 187-4 at 70-77.  According to Mays, he started working at the Monsanto plant in 1963 for Davis Construction, which later combined with Daniel to become Fluor Daniel.  *See* doc. 187-4 at 70-77. Fluor Daniel moves to strike Mays' testimony due to George's failure to disclose Mays or his contentions, as required by Federal Rules of Civil Procedure 26(a) or (e), during the discovery period.  *See* doc. 193.  As Fluor Daniel correctly points out, George waited until eight months after the discovery deadline to disclose Mays.  Doc. 183-9 at 2-3.  When "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P.

37(c)(1).    Therefore, the court **GRANTS** Fluor Daniel's Motion to Strike Witnesses Not Disclosed During Discovery, doc. 193.[7]   Accordingly, Mays' testimony is inadmissible and cannot form the basis to defeat summary judgment. Alternatively, even if Mays' testimony is admissible, it does not create a material dispute because Mays does not mention Owen directly, *see* docs. 187 at 7 (citing doc. 187-4 at 39, 41-41); 182 at 11; 187-4, and he is not even certain if he personally worked with any asbestos insulation, *see* doc. 187-4 at 74-76, 81.[8] Moreover, Owen's own testimony that he breathed in the dust generated by "Daniel" crews performing insulation work at Monsanto, doc. 182 at 3; 183-2 at 3, is speculative and conclusory, *see Ellis*, 432 F.3d at 1326 (per curiam) (citing *Bald Mountain Park, Ltd.*, 863 F.2d at 1563 ("mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion"). Accordingly, summary judgment is due in favor of Fluor Daniel.

## C. Goulds

The court turns now to the final defendant in this case, Goulds.  Like the

---

[7]   The court agrees with Judge Robreno's analysis, in denying George's motion for leave to list fact witnesses, that George's failure to timely disclose Mays was neither justified nor harmless.  *See* doc. 183-9. Basically, in Master Interrogatories to Plaintiff, the Defendants sought to discover all persons with knowledge of relevant issues to Owen's exposure to asbestos.  Docs. 183-6 at 4; 194 at 3.  George responded on July 21, 2011, but did not disclose Mays.  *See* doc. 183-6 at 4-5.  Nearly eight months after discovery closed, George moved for leave to extend time to list Mays, and two other persons, as fact witnesses, contending that George failed to list the witnesses out of "inadvertence" and that Defendants would not be prejudiced.  Docs. 183-9 at 2; 194 at 3.  Judge Robreno found that considering the substantial length of delay and the unpersuasive reason asserted, George's neglect was not excusable, and that granting the motion would substantially prejudice the Defendants, and that he would likely have to reopen discovery if he allowed George to rely on these new witnesses.  Doc. 183-9 at 3.

[8]   Mays also testified that in the late 1980s or in the 1990s he learned from a co-worker that the insulation he worked with contained asbestos.  Doc. 187-4 at 76-77, 90-91. This testimony is inadmissible hearsay.

other two defendants, Goulds argues also that George has failed to satisfy the threshold requirement of establishing that Owen was exposed to an asbestos-containing product for which Goulds is responsible.[9]  Doc. 184-1 at 1.  Based on the record before this court, the court finds that George has failed to present evidence that the Goulds pumps supplied to Monsanto were among the Goulds pumps with original asbestos-containing component parts.[10]   In fact, Owen testified that although he worked around Goulds pumps, he never worked on the internal parts of a pump, and that it was impossible to determine the manufacturer

---

[9]  Based on George's contention that Owen's primary exposure to dust created by Goulds pumps occurred while Owen worked in the "dope prep" division from 1975-1985, doc. 188 at 13, Goulds also claims it is due summary judgment based on the statute of limitations, doc. 184-1 at 22.  Under Alabama law, as it existed prior to May 19, 1980, claims arising from asbestos exposure prior to May 19, 1980 are barred by a one-year statute of limitations.  "Under §§6-2-30 and 6-2-39 of the Alabama Code of 1975 [as they existed at that time], all actions for injury to the person not arising from contract must be commenced within one year after the cause of action has accrued."  *See Henderson v. MeadWestvaco Corp.*, 23 So. 3d 625, 630 (Ala. 2009).  However, the statute of limitations changed when "the discovery rule" became effective on May 19, 1980.  Under the discovery rule, a personal injury action resulting from asbestos exposure accrues on the date the injured person, through reasonable diligence, should have reason to discover the alleged injury.  *See* Ala. Code §6-2-30(b) (1975).  After uncertainty as to whether "the discovery rule" could be applied retroactively, the Alabama Supreme Court held in *Tyson v. Johns-Manville Sales Corp.*, 399 So. 2d 263, 267 (Ala. 1981), that "if, before the effective date of Act No. 80-566, 'the discovery rule,' [May 19, 1980,] one year had elapsed between the date of the plaintiff's exposure and the date on which plaintiff's action was commenced, then that claim is nevertheless barred by the statute of limitations."  *Archer v. Mead Corp*, 998 F. Supp. 2d at 1280 (quoting *Tyson*, 399 So. 2d at 267).  Therefore, based on the law as it existed at that time, any action by, or on behalf of Owen, based on a personal injury resulting from asbestos exposure prior to May 19, 1980 had to be commenced within one year of that exposure.  *See Henderson*, 23 So. 3d at 630 (holding that plaintiff's claim of personal injury resulting from asbestos exposure accrued in 1972, and thus was time-barred in 1973).  As a result, the applicable Alabama statute of limitations bars George's claim arising from Owen's asbestos exposure prior to May 19, 1980.

[10]  George notes that Goulds admits that it

[w]as engaged in the manufacture and sale of centrifugal industrial pumps.  The only asbestos that may have been contained in its product was within the casing gasket and/or the stuffing box packing.  The casing gasket may have been made from a sheet of blended rubber and asbestos which did not have free floating propensities.  The casing gasket is confined between two pieces of bolted together material in the pump assembly and was used to establish leak-proof seals between the same.  The stuffing box packing is braided material that may have been asbestos.

Doc. 188-5 at 2.  Goulds also admits that "[p]rior to approximately 1985, Goulds sold some centrifugal pumps with asbestos-containing casing gaskets and stuffing box packing."  *Id.* at 3.

of the packing material that was removed from any of the pumps.  Doc. 184-2 at 7-9, 14, 19, 21, 24-26, 27.  Simply put, because Owen could not identify Goulds as the manufacturer of the packing to which he was exposed to during his employment at Monsanto, and in light of George's failure to present any evidence showing that a particular shipment of Goulds pumps to Monsanto had asbestos in their original packing, Goulds is due summary judgment with respect to this alleged exposure.

Similarly, for the same reasons as the claim against Crane, George's contention that Goulds is liable under the AEMLD even if Goulds did not manufacture, supply, or otherwise place into the stream of commerce the asbestos fibers that Owen was exposed to at Monsanto, doc. 188 at 8, also misses the mark.  As with his claim against Crane, George has failed to identify any evidence,[11] and the court has found none, to suggest that Goulds pumps require the use of asbestos-containing component parts, or that Goulds recommended asbestos-containing materials as replacement products.  Therefore, to the extent that George seeks to hold Goulds liable for Owen's exposure to asbestos-containing component parts that were not manufactured or supplied by Goulds, summary judgment is also warranted.

---

[11]  In support of his assertion that Goulds pumps require non-metal, asbestos containing gaskets and packing to perform as designed, George cites "See Exhibit 'D,'" a 114 page document that excerpts Owen's deposition testimony.  However, it appears that George meant to cite "Exhibit E," which is Goulds' 103 page Response to Master Discovery.  Regardless of whether it is Exhibit D or E, the court found nothing in either exhibit to support George's contentions.

## IV.   CONCLUSION

In sum, Defendants' motions for summary judgment are due to be granted.

The court will enter a separate order in accordance with this memorandum opinion.

**DONE** the 24th day of March, 2016.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE